IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No: <u>6:18-575</u> |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL B. MESSER, JR. | ) | |

### **GOVERNMENT'S MOTION FOR UPWARD VARIANCE AND SENTENCING MEMORANDUM**

The United States of America, by and through its undersigned counsel, respectfully files this motion for an upward variance from Defendant MICHAEL B. MESSER JR.'s ("Messer") resulting guidelines in order to fulfill the statutory purposes of sentencing as set out in Title 18, United States Code, Section 3553(a).

### **General Background**

In support of this motion, the United States relies upon the prior criminal history section of the Pre-Sentence Investigation ("PSR"), ¶¶ 25-36, as well as Messer's disturbing online activity involving the Foreign Terrorist Organization the Islamic State of Iraq and al-Sham (ISIS herein). Specifically, the Government contends that in light of Messer's history, an upward variance is appropriate in order to take into account the "the nature and circumstances of the offense and the characteristics of the defendant," "the need for the sentence imposed to reflect the

1

seriousness of the offense, to promote respect for the law, and to provide just punishment," "the need for the sentence imposed to afford adequate deterrence to criminal conduct," "the need for the sentence imposed to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a).

Messer's PSR calculations result in a total offense level of 13, a criminal history category of III, and a Guidelines range of 18 to 24 months. However, his conduct is more serious than his Guideline range indicates and his criminal history category is underrepresented. These two arguments form the basis for this Motion for an Upward variance.

Title 18, United States Code, Section 3553 sets forth the procedure by which a sentencing court must determine the defendant's sentence. Among other factors, this Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a). According to the revised sentencing scheme promulgated by and in the wake of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the district court must first calculate the advisory Guidelines range and then consider the factors set forth in § 3553(a). In making this determination, this Court should determine whether a traditional departure is necessary or appropriate to achieve the statutory purpose of sentencing and/or whether a variant sentence is necessary to achieve the statutory purposes of

sentencing. *See generally United States v. Diosdado–Star*, 630 F.3d 359 (4th Cir. 2011).

In Messer's case, the Government asserts that an upward variance would be justified as the 51-year-old Messer has an extensive criminal history from federal and state convictions, some of which involved firearms, multiple repeated theft offenses, and threats against law enforcement. Messer's first adult conviction stemmed from a December 1986 grand larceny arrest followed by March and April 1988 convictions for fraud, burglary, larceny, and several forgeries.

In May 1989, Messer was charged again with larceny and several forgeries. After being released from prison in 1990, Messer returned to his criminal lifestyle and in November 1994 he was arrested on three counts of breaking into a motor vehicle and received probation. Thereafter, in July 2000, Messer again was charged with the theft offense of breach of trust over $5000, and convicted. In April 2003, he was charged with multiple driving offenses to include driving under suspension and failing to surrender his license. Messer was not deterred and continued his criminal activity in December 2006 when he was charged with Driving Under the Influence and hit and run with property damage. Continuing his disregard for the law, in 2007 Messer was charged and convicted of breach of the peace (aggravated), and the crime of violence of threatening the life of a public official, in violation of

3

S.C. Code Ann. § 16-3-1040(A). *See Febrez v. United States*, 2017 WL 4764810 (D.S.C. 2017) (finding § 16-3-1040(A) a crime of violence). Neither jail time nor probation instilled a law-abiding sense in Messer. In August 2012, he was convicted in this District of being a felon in possession of a firearm and sentenced to 30 months' incarceration. Clearly, that arrest had no deterrent effect whatsoever as illustrated one day after Messer's arrest when he was charged with throwing bodily fluids on an officer. Messer was also convicted of that offense. (PSR ¶¶ 25-36) Then, in 2018, Messer was once again charged and now stands convicted of two counts of being a felon in possession of a firearm.

As outlined in the PSR, Messer has consistently been in and out of trouble since 1986. As summarized above, Messer's thirty-two year history of state and federal convictions has failed to provide any deterrent effect or respect for the law. It should be noted that Messer also has several other arrests from 1986 through 2012, which were dismissed and not noted herein.

In addition to Messer's extensive criminal background, he also has a history of involvement with extremist organizations. For example, in 2007 Messer admitted he was a member of the "Nazi skinhead[s] and an active member of several groups including the Hammerskins, Blood and Honour, and the NSM [National Socialist Movement]." (PSR ¶ 56) Additionally, Messer has a tattoo of the White Power

4

Symbol with wings on his right arm, SS wings on his back, and the German Eagle and the number "88" on his chest. (PSR ¶ 59)

Messer's interests in white supremacy and Neo-Nazism appear to have changed, and in 2018, the FBI and DHS became aware that Messer was active online and offering to become a suicide bomber for the Foreign Terrorist Organization ISIS. During their investigation, the FBI determined that Messer had sent the following communication to eleven people on Facebook:

> Assalamulaikum brother do you speak English? Are you with Islamic State? I am American Sunni Muslim Jihadist and interested in joining Islamic State and volunteer to be suicide bomber. If you speak English please message me back and thank you brother! Mike Bakour Messer.

Although Messer denied making such postings when asked by the FBI, during the searches of his residence and phone the FBI located ISIS videos, ISIS books, ISIS images, an ISIS flag; images of prominent jihadis such as Osama bin-Laden, Abu Musab al- Zarqawi (the godfather of ISIS), and Omar Abd al-Rahman (The Blind Sheikh), and Omar Mateen's (the Pulse night club shooter) home phone number as well as wedding photo of Mateen and his wife. Messer's cellphone's Amazon application also indicated he had recently viewed a book titled "The Orlando Shooting Story, What Now? Voice of the Martyred." Messer's Amazon checkout cart included DVDs such as "Suicide Killers," "Frontline: Losing Iraq," "Frontline: Confronting ISIS", and "Hell on Earth, The Fall of Syria and the Rise of

ISIS," and the paperback book, "The ISIS Apocalypse."

The FBI also uncovered a March 2018 email sent by Messer to an identified individual requesting assistance with getting in touch with Abu Hasan al-Muhajir, ISIS' spokesperson, for an interview. Messer provided this individual with his email address and phone number and asked him to tell al-Muhajir to get in touch with him. Messer's Facebook search history also indicated that in May 2018, Messer searched for al-Muhajir's Facebook page.

## **Legal Standard**

When a district court imposes a sentence that falls outside of the applicable Guidelines range, the Fourth Circuit considers "whether the sentencing court acted reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the sentencing range." *United States v. Hernandez–Villanueva*, 473 F.3d 118, 123 (4th Cir. 2007). In conducting this review, the appellate court must give due deference to the sentencing court's decision because it has "flexibility in fashioning a sentence outside of the Guidelines range," and need only "set forth enough to satisfy [the appellate court] that it has considered the parties' arguments and has a reasoned basis" for its decision. *Diosdado–Star*, 630 F.3d at 364 (internal quotation marks and alterations omitted); *see also United States v. Carter*, 564 F.3d 325, 328 (4th Cir.2009) (providing that

sentencing court "must make an individualized assessment based on the facts presented") (internal quotation marks and emphasis omitted).

**Argument**

Based on Messer's decades-long criminal history combined with his terrorism related activities, the Government submits that an upward variance would be appropriate in light of the factors set forth in 18 U.S.C. § 3553(a). Pursuant to § 3553(a), the Court shall consider:

- the nature and circumstances of the offense and the characteristics of the defendant;

- the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;

- the need for the sentence imposed to afford adequate deterrence to criminal conduct;

- the need for the sentence imposed to protect the public from further crimes of the defendant;

- the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

- the kinds of sentences available;

- the kinds of sentence and the sentencing range established for the offense pursuant to the sentencing guidelines;

- the need for the sentence imposed to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

- and the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a). The sentencing court must then impose a sentence that is sufficient, but not greater than necessary, to achieve the statutory purposes of sentencing. While defendants often argue that this provision is the most important factor to be considered by sentencing courts, the Supreme Court has clearly indicated that none of the factors listed in § 3553(a) should be elevated above the others. *See Pepper v. United States*, 562 U.S. 476 (2011).

District judges should have "'the fullest information possible concerning the defendant's life and characteristics when selecting an appropriate sentence." *United States v. Love*, 134 F.3d 595 (4th Cir. 1998) (quoting *United States v. Watts*, 519 U.S. 148 (1997)). Indeed, it is undisputed that at a sentencing hearing, the court may consider a "broad scope of information." *United States v. Falesbork*, 5 F.3d 715, 722 (4th Cir. 1993); *United States v. Nichols*, 438 F.3d 437, 439 (4th Cir. 2006) ("District courts traditionally have been 'given wide latitude as to the information they may consider in passing sentence after a conviction.'" (quoting *United States v. Howard-Arias*, 679 F.2d 363, 367 (4th Cir. 1982). The "Supreme Court noted that in modern sentencing, which seeks a punishment that fits the offender, not just the crime, the sentencing judge should be able to consider 'the fullest information possible concerning the defendant's life and characteristics.'" *United States v. Umana*, 750

F.3d 320, 346 (4th Cir. 2014) (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)); *see also United States v. Tucker*, 404 U.S. 443, 446 (1972) ("before making [the sentencing] determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.").

This broad view as to the admissibility of evidence during sentencing is mandated in 18 U.S.C. § 3661, which states, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." *See also United States v. Powell*, 650 F.3d 388, 392 (4th Cir. 2011) ("We too have repeatedly allowed a sentencing court to consider 'any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its accuracy.'") (citations omitted). The district court's broad discretion at sentencing is also preserved in the Guidelines. *See* U.S.S.G. § 6A1.3(a) (stating that the only evidentiary limitation upon a sentencing court is that the evidence must be relevant and have "sufficient indicia of reliability to support its probable accuracy."); *Nichols*, 438 F.3d at 440 ("This broad discretion has been preserved under the sentencing guidelines [in U.S.S.G. § 6A1.3(a)]."); *see also* Fed.

9

R. Evid. 1001(d)(3) (exempting sentencing proceedings from the Federal Rules of Evidence).

Under these principles, the Government respectfully urges this Court to consider the circumstances surrounding Messer's most recent conviction, specifically as related not just to his interest in ISIS, but his repeatedly stated desire to offer himself into the service of ISIS to conduct a violent attack. The Government notes that in considering the totality of the circumstances surrounding Messer's firearm offense, this Court would not be writing on a blank slate.

Three recent cases highlight the seriousness with which sentencing courts have treated Section 922(g) violations involving conduct pertaining to ISIS. In the following three cases, defendants convicted of violating Section 922(g) received above-guideline sentences after the sentencing court's consideration of the defendants' infatuation with ISIS and/or stated desire to commit violent attacks.[1] *See, e.g.*, *United States v. Spain*, 3:17-CR-123 (E.D. Va. Feb. 14, 2018) (Defendant's Guidelines range was 46-57 months; court imposed upward variance sentence of 120 months); *United States v. Wehelie*, 1:16-CR-162 (E.D. Va. July 14, 2017) (defendant's Guidelines range was 33-41 months; court imposed upward departure

---

[1] In none of the cases cited by the government were the defendants also convicted of more traditional terrorism-related offenses, such as providing material support to a Designated Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B, or providing material support to terrorism, in violation of 18 U.S.C. § 2339A. The cases cited by the government only include defendants who were convicted of either Section 922(g) or other firearms-related offenses within Section 922.

and variance sentence of 120 months); *United States v. Diaz*, 1:15-CR-20264 (S.D. Fl. July 28, 2015) (defendant's Guidelines range was 33-41 months; court imposed upward variance sentence of 120 months' incarceration); *see also United States v. Diaz*, 652 F. App'x 839 (11th Cir. 2016) (affirming Diaz's upward variance sentence of 120 months without further discussion).

Courts have acted similarly in the context of other firearm possession convictions under Section 922 where the defendant had expressed a commitment to ISIS and a desire to commit violent attacks. *See, e.g.*, *United States v. Franey*, 3:16-CR-05073 (W.D. Wash. Jan. 23, 2017) (Defendant's Guidelines range was 33-41 months for unlawful possession of a machine gun under 18 U.S.C. § 922(o); court imposed upward variance sentence of 72 months); *see also United States v. Franey*, 723 F. App'x 459 (9th Cir. 2018) (affirming Franey's variance sentence and rejecting argument that the district court erred in considering his religious and political views).

Other firearm possession convictions have been met with similar severity by sentencing courts where the defendants demonstrated proclivities toward jihadist-inspired violence and/or an interest in other Foreign Terrorist Organizations. *See United States v. Rios*, 5:13-CR-00081 (E.D.N.C. Oct. 8, 2013) (Defendant convicted of possessing a stolen firearm under 18 U.S.C. § 922(j) sentenced to 120 months'

11

incarceration); *United States v. Shah*, 4:06-CR-00428 (S.D. Tex. Sept. 25, 2007) (defendant received upward departure sentence of 78 months' incarceration for possession of a firearm by an alien under 18 U.S.C. § 922(g)(5)(B)); *see also United States v. Shah*, 294 F. App'x 951 (5th Cir. 2008) (affirming Shah's 78-month sentence).

A recent case from the Sixth Circuit is illustrative of this general approach. In *United States v. Rayyan*, 885 F.3d 436 (6th Cir. 2018), the defendant was convicted of making a false statement while purchasing a firearm, in violation of 18 U.S.C. § 922(a)(6), and possessing a firearm as an unlawful user of controlled substances, in violation of 18 U.S.C. § 922(g)(3). *Id*. at 440. The defendant, an avid consumer of ISIS propaganda, had also expressed a desire to commit a violent, jihad-inspired attack, possessed ISIS materials on his cell phone, and posted supportive images of ISIS on social media. *Id*. Although the defendant's guidelines range was 15-21 months, *id*. at 440, the court imposed "a substantial upward variance based in part on uncharged conduct and [the] defendant's online viewing habits and online communications[.]" *Id*. at 438.

The Sixth Circuit affirmed the 96-month sentence, stating that:

> A defendant may have a right to post more or less what he wants. But the government may hold defendants to account for what they say if that speech and related conduct reveals a criminal element, a motive, or a factor that aggravates a sentence. *See Wisconsin v. Mitchell*, 508 U.S.

12

> 476, 486-490 (1993); *Dawson v. Delaware*, 503 U.S. 159, 166 (1992). The content found in Rayyan's messages, phone, and social media profiles all directly related to the § 3553(a) analysis: It shed light on what sort of danger Rayyan presented to the public, how severe his conduct was, and what kind of sentence would be needed to deter other individuals from heading down the same path.

*Id*. at 441; *see also United States v. Kaziu*, 559 F. App'x 32, 39 (2d Cir. 2014) ("the district court did not punish Kaziu for his radical [jihadist] beliefs; rather, it considered them in assessing his continuing danger to the public. This finds support in both law and precedent." (citing See 18 U.S.C. § 3553(a)(2)(C)).

Messer's interest in ISIS, and, more importantly, the conduct influenced by such an interest, is undoubtedly germane to the sentence he should receive, and this court is permitted to consider it. *See, e.g.*, *United States v. Runyon*, 707 F.3d 475, 494 (4th Cir. 2013); *Hernandez-Villanueva*, 473 F.3d at 123 (affirming upward variance sentence as not violative of defendant's First Amendment rights where the district court considered the defendant's association with the MS-13 gang) (citing *Dawson v. Delaware*, 503 U.S. 159, 165 (1992)); *United States v. Wells*, 163 F.3d 889, 899 (4th Cir. 1998) (rejecting First Amendment argument that defendant was "being punished for being a member of the [anti-government] Freemen organization" where "ample evidence . . . shows that [the defendant's] plans and

activities support the upward departure").2

The government has a legitimate public safety interest in preventing individuals who have "repeatedly and flagrantly ignored the laws of the United States" from possession firearms. *See United States v. Pruess*, 703 F.3d 242, 247 (4th Cir. 2012). As the Fourth Circuit has stated, "the rational connection between the law [Section 922(g)] and its intent is undeniable. A legislature's 'judgment that a convicted felon . . . is among the class of persons who should be disabled from dealing in or possessing firearms because of potential dangerousness is rational.'" *United States v. O'Neal*, 180 F.3d 115, 124 (4th Cir. 1999) (quoting *Lewis v. United States*, 445 U.S. 55, 67 (1980)). Indeed, a predisposition for dangerousness is the *sine qua non* of the criminal offense itself. *See United States v. Carter*, 669 F.3d 411, 417 (4th Cir. 2012) ("Congress enacted the precursor to what is now 18 U.S.C. § 922(g)(3) as part of the Gun Control Act of 1968 [], seeking 'broadly to keep firearms away from the persons [it] classified as potentially irresponsible and dangerous.'" (quoting *Barrett v. United States*, 423 U.S. 212, 218 (1976))); *United States v. Mooney*, 497 F.3d 397, 407 (4th Cir. 2007) ("the purpose behind the statute

---

2 The Fourth Circuit has consistently affirmed the admission at trial of evidence related to foreign terrorism, including statements about the religious obligation to perform jihad. *See United States v. Hassan*, 742 F.3d 104 (4th Cir. 2014) (affirming admission of defendants' statements and Facebook postings advocating violent jihad as relevant to the jury's determination that the defendants "travelled abroad with the hope of acting on their beliefs by engaging in jihad and fighting against the 'kuffar.'"); *United States v. Hammoud*, 381 F.3d 316 (4th Cir. 2004) (en banc) (affirming admission of video tapes depicting violence and anti-American sentiment in a prosecution for providing material support for a terrorist organization), *overruled on other grounds by Hammoud v. United States*, 543 U.S. 1097 (2005).

[Section 922(g)] is to "keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." (quoting *Barrett*, 423 U.S. at 218)).

Not only does Messer's criminal history indicate his dangerousness, but also his interest in and willingness to commit violence in the name of a Foreign Terrorist Organization. The public can be thankful that Messer's repeated Facebook messages to this effect fell on deaf ears; one need not speculate as to the ramifications of Messer's actions had his messages found a willing customer. Messer's interest in ISIS, as well as his desire to commit violence in its name, speaks directly to the nature and circumstances of the offense and the characteristics of the defendant, specifically his future dangerousness.

For the reasons set forth above, the United States respectfully submits that an upward variance is appropriate. It is apparent from his thirty two year criminal activity that Messer is not deterred from criminal conduct; he continues to show little, if any, respect the law; has not learned from his punishment; and continues to endanger the public. The range of 18-24 months is insufficient to meet the purposes of § 3353(a). Accordingly, the Government respectfully requests that the court vary upward when sentencing Defendant.

Respectfully submitted,

SHERRI A. LYDON
UNITED STATES ATTORNEY

By: s/ Max Cauthen
Max B. Cauthen, III
Assistant U.S. Attorney
D.C. Bar No. 6732
55 Beattie Place, Suite 700
Greenville, SC 29601
(864) 282-2100